PEOPLE v KAHLEY

Docket No. 271656. Submitted November 6, 2007, at Grand Rapids. Decided November 13, 2007, at 9:05 a.m. Leave to appeal sought.

Larry E. Kahley was convicted by a jury in the Allegan Circuit Court of first-degree criminal sexual conduct. The court, George R. Corsiglia, J., sentenced the defendant to 25 to 75 years in prison. The defendant appealed.

The Court of Appeals *held*:

1. Plain error occurred when a police officer was allowed to testify that the defendant refused to take a polygraph examination. However, this plain error was not preserved for appeal in the absence of an objection at trial, and it does not require reversal because it did not affect the outcome of the trial, did not result in the conviction of an actually innocent defendant, and did not seriously affect the fairness and integrity of the judicial proceedings.

2. The trial court did not abuse its discretion in admitting evidence of other bad acts that showed that the defendant, in addition to sexually abusing the victim in this case, also sexually abused the minor child of his girlfriend. The defendant's due process rights were not violated by the introduction of this evidence.

3. The trial court articulated objective, verifiable, substantial, and compelling reasons for imposing a sentence that exceeded the minimum sentence range recommended by the legislative sentencing guidelines. The trial court did not abuse its discretion in relying on the facts that the defendant committed perjury when he testified at trial, that the guidelines do not adequately address pedophilia, and that the guidelines inadequately address the factual situation presented in this case, in which the defendant sexually abused extremely young, defenseless children, including his own child. The trial court did not err with regard to the extent of the departure from the guidelines.

Affirmed.

*Michael A. Cox*, Attorney General, *Thomas L. Casey*, Solicitor General, *Frederick Anderson*, Prosecuting At-

torney, and *Douglas E. Ketchum*, Assistant Prosecuting Attorney, for the people.

*Law Office of John D. Roach, Jr., PLC* (by *John D. Roach, Jr.*), for the defendant.

Before: MURPHY, P.J., and SMOLENSKI and METER, JJ.

MURPHY, P.J. Defendant was convicted of first-degree criminal sexual conduct, MCL 750.520b(1)(a), and sentenced to 25 to 75 years' imprisonment. He appeals as of right his conviction and sentence. We affirm.

Defendant first claims on appeal that he was denied a fair trial when the police officer who interviewed him testified that defendant refused to take a polygraph examination. Although defendant began to object to the officer's testimony, defendant never completed the objection. He never requested a ruling, a curative instruction, or a mistrial. Accordingly, there was no objection and the issue is unpreserved. We review an unpreserved claim of error for plain error affecting the defendant's substantial rights. *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999).

It is well established that testimony concerning a defendant's polygraph examination is not admissible in a criminal prosecution. *People v Jones*, 468 Mich 345, 355; 662 NW2d 376 (2003). It is plain error for the jury to be presented with the results of a polygraph examination. *People v McGhee*, 268 Mich App 600, 630; 709 NW2d 595 (2005); *People v Nash*, 244 Mich App 93, 97; 625 NW2d 87 (2000). Accordingly, plain error occurred when the officer testified that defendant refused to take a polygraph examination.[1] However, not every reference

---

[1] While this case does not involve the actual taking of a polygraph test and commentary thereon, the reference to a defendant's refusal to take

to a polygraph examination requires reversal. *Id.* at 98; *People v Rocha*, 110 Mich App 1, 8; 312 NW2d 657 (1981). Reversal is not required in the present case. The reference to defendant's refusal to take a polygraph examination was brief, the reference to defendant's refusal was not repeated, the prosecutor did not argue that defendant was guilty because he had refused to take a polygraph examination, defendant himself later testified that he asked to take a polygraph test but was never given one, and defendant confessed to the crime. See *Nash, supra* at 98. Under these circumstances, we conclude that the plain error did not affect the outcome of defendant's trial, and, additionally, we cannot conclude that the error resulted in the conviction of an actually innocent defendant or seriously affected the fairness and integrity of the judicial proceedings. *Carines, supra* at 763. Accordingly, defendant has failed to establish plain error requiring reversal. *Id.*

Defendant next claims on appeal that he was denied a fair trial when the trial court admitted evidence that he sexually abused the son of his girlfriend. We review a trial court's admission of evidence of other bad acts for an abuse of discretion. *McGhee, supra* at 609. A trial court abuses its discretion when it fails to select a principled outcome from a range of reasonable and principled outcomes. *People v Babcock*, 469 Mich 247, 269; 666 NW2d 231 (2003).

To be admissible under MRE 404(b), bad-acts evidence must satisfy three requirements: (1) the evidence must be offered for a proper purpose; (2) the evidence

---

a polygraph test is equally problematic because it suggests fear of being caught in a lie and thus guilt, which also bear on a defendant's right to remain silent. In *Rivers v Ex-Cell-O Corp*, 100 Mich App 824, 837; 300 NW2d 420 (1980), this Court, citing *People v Scotts*, 80 Mich App 1, 11-13; 263 NW2d 272 (1977), stated that "[i]t is erroneous to bring to the jury's attention evidence of a refusal to take a polygraph examination."

must be relevant; and (3) the probative value of the evidence must not be substantially outweighed by unfair prejudice. *People v Knox*, 469 Mich 502, 509; 674 NW2d 366 (2004). Evidence of uncharged acts may be admissible to show that the charged act occurred if the uncharged acts and the charged act are sufficiently similar to support an inference that they are manifestations of a common plan or scheme. *People v Sabin (After Remand)*, 463 Mich 43, 63; 614 NW2d 888 (2000). Distinctive and unusual features are not required to establish the existence of a common plan or scheme. *Id.* at 65-66. In the present case, at the time of the sexual assaults, which occurred within a four-month period, the victim and defendant's girlfriend's son were both four years old and under the care and supervision of defendant. Moreover, defendant sexually assaulted the two boys in the same manner. He first rubbed their penises before performing fellatio on the boys. Under these circumstances, the charged act and the uncharged act are sufficiently similar to show that defendant engaged in a common plan or scheme. In addition, because the evidence that defendant sexually abused his girlfriend's son provided the inference that defendant acted in accordance with a common scheme or plan, the evidence was relevant to whether the charged crime occurred. See *People v Hine*, 467 Mich 242, 251; 650 NW2d 659 (2002). Finally, the probative value of the bad-acts evidence was not substantially outweighed by unfair prejudice. The evidence was highly probative because it was relevant to the ultimate issue at trial, whether defendant performed oral sex on the victim. Moreover, the trial court instructed the jury that it was to consider the evidence only for the purpose of determining if defendant acted in accordance with a common plan or scheme. Such a limiting instruction protects a defendant's right to a fair trial. *People v Smith*, 243

Mich App 657, 675; 625 NW2d 46 (2000). The trial court did not abuse its discretion in admitting evidence that defendant sexually abused his girlfriend's son. Additionally, defendant's due process rights were not offended or violated by the introduction of the evidence.[2]

Defendant finally claims that the trial court, when it sentenced him to 25 to 75 years' imprisonment, failed to articulate substantial and compelling reasons for departing from the recommended minimum sentence range under the legislative sentencing guidelines. The recommended sentence range was 9 to 15 years' imprisonment.

Generally, a trial court is required to impose a minimum sentence that falls within the recommended minimum sentence range. MCL 769.34(2); *Babcock, supra* at 255. A trial court may only depart from the recommended sentence range if there is a substantial and compelling reason for doing so. MCL 769.34(3); *Babcock, supra* at 255-256. A substantial and compelling reason must be objective and verifiable, *id.* at 257-258, meaning that it is external to the minds of the trial court, the defendant, and others involved in making the decision, and is capable of being confirmed, *People v Abramski*, 257 Mich App 71, 74; 665 NW2d 501 (2003). In addition, a substantial and compelling reason is one that keenly or irresistibly grabs the court's attention, and one the court recognizes as being of

---

[2] We note that after the defendant's trial the Legislature enacted MCL 768.27a, effective January 1, 2006, which therefore is not applicable in this case, but which provides in part:

(1) [I]n a criminal case in which the defendant is accused of committing a listed offense against a minor [including criminal sexual conduct], evidence that the defendant committed another listed offense against a minor is admissible and may be considered for its bearing on any matter to which it is relevant.

considerable worth in deciding the defendant's sentence. *Babcock, supra* at 257. Substantial and compelling reasons to depart only exist in exceptional cases. *Id.* Further, MCL 769.34(3)(b) provides:

> The court shall not base a departure on an offense characteristic or offender characteristic already taken into account in determining the appropriate sentence range unless the court finds from the facts contained in the court record, including the presentence investigation report, that the characteristic has been given inadequate or disproportionate weight.

Here, three components factored into the trial court's reasoning in deciding to depart upward from the recommended minimum sentence range. First, the trial court found that defendant committed perjury when he testified at trial. Second, the trial court concluded that defendant is a pedophile and that long-term confinement was necessary to protect children because pedophilia is a disorder not amenable to treatment and pedophiles are likely to repeat their conduct and offenses. The court found that the guidelines were wholly inadequate in addressing pedophilia. Third, the court found that the guidelines inadequately addressed the factual situation in which the defendant sexually abused extremely young, defenseless children, including, horrifically, his own child. We note that the record reflects that defendant performed fellatio on his four-year-old son, performed fellatio twice on the four-year-old son of a girlfriend, and had sexually abused a five-year-old boy 10 years earlier when defendant was a teenager.

Defendant's chief argument is that the reasons given by the court for the departure were not objective and verifiable, nor otherwise substantial and compelling. We review de novo whether a factor is objective and

verifiable. *Babcock, supra* at 265. Whether an objective and verifiable factor constitutes a substantial and compelling reason for departure is reviewed for an abuse of discretion. *Id.*

Defendant's perjury was an objective and verifiable factor under the circumstances presented in this case. We recognize that whether a person perjured himself or herself at trial may on some occasions be a subjective conclusion, i.e., an internal belief that the person was lying without a firm confirmation. However, defendant admitted at his sentencing that he lied to the jury and that he committed the offenses. Accordingly, the perjury factor as found by the trial court was objective and verifiable. But, by itself, this would be insufficient to constitute a substantial and compelling reason for departure from the guidelines; otherwise, a departure might be warranted every time a defendant testified and was found guilty.

We next address the court's conclusion that defendant is a pedophile and that long-term confinement was necessary because pedophilia is not amenable to treatment and pedophiles are likely to repeat their conduct and offenses. First, we do find that the court's conclusion that defendant is a pedophile is objective and verifiable on the basis of his actions. The Diagnostic and Statistical Manual of Mental Disorders (DSM-IV),[3] with respect to the criteria for pedophilia, indicates that the criteria are met where a person engages in sexual activity with prepubescent children over, minimally, a six-month period, where the behaviors cause clinically significant impairment in social and occupational functioning, and where the person is at least 16 years old

---

[3] This manual is published by the American Psychiatric Association, and we take judicial notice of its existence and content, MRE 201.

and at least five years older than the children. DSM-IV, § 302.2, Pedophilia. A review of the trial transcript and the presentence investigation report, which includes information regarding defendant's drug and alcohol abuse, his multiple short-term relationships, and his inability to hold a job or stay in one place, supports the conclusion that defendant is indeed a pedophile. Moreover, the DSM-IV states that the course of pedophiliac behavior "is usually chronic, especially in those attracted to males. The recidivism rate for individuals with Pedophilia involving a preference for males is roughly twice that for those who prefer females." DSM-IV, § 302.2, p 528. Thus, the trial court's observation that pedophiles are not amenable to treatment and are likely to repeat their conduct and reoffend was external to the mind of the court and finds support by experts in the field of psychiatry. Further, the trial court referenced its own experiences with various defendants over the years who showed an inability to curtail their pedophiliac tendencies. We additionally note that the sentencing guidelines do not address pedophilia. That being said, the trial court's observations of pedophilia in general, when viewed in the context of defendant's case, lead us to the necessary conclusion that the court believed that defendant would in fact engage in acts of pedophilia in the future if given the opportunity. While one might opine that this belief or finding is not objective and verifiable, this Court in *People v Armstrong*, 247 Mich App 423, 425; 636 NW2d 785 (2001), a criminal sexual conduct case involving a child and a departure from the legislative sentencing guidelines, stated that the "trial court ... did not err in finding that the need to protect other children by the sentence imposed is another factor not adequately considered by the guidelines." The need to protect other children

would indicate a conclusion that the defendant was likely to reoffend in the future.

*Armstrong* is binding law, and regardless of whether the trial court's comments on pedophilia properly supported the departure, reversal is not warranted because we agree with the court's finding that the guidelines inadequately addressed the factual situation in which the defendant sexually abused extremely young, defenseless children, including his own child.

The *Armstrong* panel held:

> Defendant has an uncontrollable sexual attraction toward little boys, apparently as a result of his history of sexual abuse. The trial court did not err in finding that this is a factor not adequately considered by the guidelines. . . . Further, the guidelines take into account psychological injury to the victim requiring therapy, MCL 777.34, but do not take into account the violation of the victim's parents' trust in defendant, the effect on the family occasioned by the victim's loss of trust in all men, including his own father, or the effect on the victim and his sister from having to learn about sexual matters at such a young age. We also note that the prosecutor's decision, in exchange for defendant's guilty plea, to dismiss a charge of first-degree CSC, which carries a potential life sentence, and the fact that defendant was not charged with attempted CSC for trying to have the victim perform oral sex on him are additional factors that the court can consider when deciding whether departure is warranted. Therefore, the trial court did not abuse its discretion in finding substantial and compelling reasons for departing upward from the guidelines. [*Armstrong, supra* at 425-426 (citations omitted).]

In the case at bar, there was evidence that defendant performed sexual acts, including forced fellatio, on defenseless four- and five-year-old children, including his own son. This is objective and verifiable. While the guidelines address psychological injury, MCL 777.34, as noted in *Armstrong*, and address exploitation of vulner-

able victims based on their youth, MCL 777.40, these provisions are simply inadequate to address the abhorrent nature of the crimes committed by defendant. Taking this and perjury into consideration, the trial court did not abuse its discretion in finding substantial and compelling reasons for departing from the guidelines, nor was there error with respect to the extent of the departure.[4]

Affirmed.

---

[4] To the extent that some of the court's commentary was improper, we are confident that the court would have departed, and departed to the same degree, on the basis of the substantial and compelling reasons approved of in this opinion. See *Babcock, supra* at 271.