# STATE OF MICHIGAN

# COURT OF APPEALS

---

PEOPLE OF THE STATE OF MICHIGAN,

       Plaintiff-Appellee,

v

LADARIUS EDWARD WELCH,

       Defendant-Appellant.

UNPUBLISHED
November 14, 2017

No. 333571
Saginaw Circuit Court
LC No. 15-041367-FC

---

PEOPLE OF THE STATE OF MICHIGAN,

       Plaintiff-Appellee,

v

JARQUEZ DOMINIQUE SWILLEY,

       Defendant-Appellant.

No. 333629
Saginaw Circuit Court
LC No. 15-041366-FC

---

Before: M. J. KELLY, P.J., and RONAYNE KRAUSE and BOONSTRA, JJ.

PER CURIAM.

Defendants, Ladarius Welch and Jarquez Swilley, were tried jointly, before a single jury. The jury convicted Welch of first-degree premeditated murder, MCL 750.316(1)(a), carrying a weapon with unlawful intent, MCL 750.226, and two counts of possession of a firearm during the commission of a felony (felony-firearm), MCL 750.227b. The jury convicted Swilley of first-degree premeditated murder, carrying a weapon with unlawful intent, felon in possession of a firearm, MCL 750.224f, and three counts of felony-firearm.[1] The trial court sentenced Welch to concurrent terms of life imprisonment without parole for the first-degree murder conviction

---

[1] The jury also convicted both defendants of an additional charge of conspiracy to commit first-degree murder, MCL 750.157a and MCL 750.316, and an associated felony-firearm charge. After trial, the trial court granted defendants' motions for a directed verdict with respect to those charges.

-1-

and two to five years' imprisonment for the carrying a weapon with unlawful intent conviction, to be served consecutive to concurrent two-year terms of imprisonment for the felony-firearm convictions. The court sentenced Swilley as a fourth-offense habitual offender, MCL 769.12, to concurrent terms of life imprisonment without parole for the first-degree murder conviction and life in prison with the possibility of parole for the carrying a weapon with unlawful intent and felon-in-possession convictions, to be served consecutive to three concurrent two-year terms of imprisonment for the felony-firearm convictions. Welch appeals as of right in Docket No. 333571, and Swilley appeals as of right in Docket No. 333629. For the reasons stated in this opinion, we affirm in both appeals.

## I. BASIC FACTS

Defendants' convictions arise from the April 2, 2014 shooting death of Davontae Weems. The prosecution's theory of the case was that both Welch and Swilley had a history of disagreements and confrontations with Weems, and they were looking for him on April 2, 2014, in order to kill him. The prosecution argued that Welch and Swilley saw Weems walking on the street, and that Swilley shot and killed Weems with Welch's assistance.

At trial, DeQuaviz Cannon testified that he was a passenger in a vehicle with Welch and Swilley when they saw Weems walking down the street. Cannon testified that Welch turned into a driveway and Swilley, who had a gun, exited the van and started chasing Weems, firing shots at him. Welch eventually stopped his van near Weems's body, exited the van, confirmed that Weems was dead, and told Swilley, "You got that motherf***er." Cannon acknowledged that when he first spoke to the police, he falsely stated that Welch and Swilley were not involved in the shooting because he did not want to implicate them. Cannon received immunity in exchange for his testimony.

Swilley's former girlfriend, Arnisha Dorsey, testified that Swilley initially denied any involvement in the shooting, but then later admitted to her that he had killed Weems. Dorsey also testified that after Swilley was incarcerated, he asked her to dispose of the gun, but she refused. Thereafter, Swilley contacted Welch, who borrowed Dorsey's keys and removed the gun from her apartment. Dorsey further testified that Swilley encouraged her to lie to the police. She admitted that she initially told the police that she did not know anything about the shooting, but testified at trial that this statement was false. Dorsey accepted a plea agreement in which she pleaded guilty to accessory after the fact to first-degree murder and obstruction of justice in exchange for her testimony and a recommendation that she be placed on probation.

## II. SUFFICIENCY OF THE EVIDENCE

### A. STANDARD OF REVIEW

Welch argues that the evidence was insufficient to prove beyond a reasonable doubt that he aided or abetted Swilley in the killing of Weems because the evidence did not show that he knew of Swilley's plan to find and shoot Weems. Swilley also argues that there was insufficient

evidence to support his convictions.[2] We review de novo a challenge to the sufficiency of the evidence. *People v Meissner*, 294 Mich App 438, 452; 812 NW2d 37 (2011). This Court is required to "view the evidence in a light most favorable to the prosecution to determine whether a rational trier of fact could have found the essential elements of the crime to have been proved beyond a reasonable doubt." *Id.* This Court will not interfere with the jury's role of determining the weight of the evidence or the credibility of witnesses. *People v Milstead*, 250 Mich App 391, 404; 648 NW2d 648 (2002). A trier of fact may make reasonable inferences from direct or circumstantial evidence in the record. *People v Vaughn*, 186 Mich App 376, 379-380; 465 NW2d 365 (1990).

## B. ANALYSIS

### 1. WELCH

The prosecution argued that Welch was guilty under an aiding or abetting theory.[3] The phrase "aiding and abetting" describes all forms of assistance given to the actual perpetrator of the crime. *People v Jackson*, 292 Mich App 583, 589; 808 NW2d 541 (2011). To establish that a defendant aided or abetted a crime, the evidence must show that: "(1) the crime charged was committed by the defendant or some other person; (2) the defendant performed acts or gave encouragement that assisted the commission of the crime; and (3) the defendant intended the commission of the crime or had knowledge that the principal intended its commission at the time that [the defendant] gave aid and encouragement." *People v Plunkett*, 485 Mich 50, 61; 780 NW2d 280 (2010) (quotation marks and citation omitted). Some aid and encouragement is required, but the actual amount given is immaterial. *People v Moore*, 470 Mich 56, 71; 679 NW2d 41 (2004). An aider or abettor's state of mind may be inferred from the facts and circumstances surrounding the incident. *People v Bennett*, 290 Mich App 465, 474; 802 NW2d 627 (2010). Factors to be considered in determining whether a defendant aided or abetted a crime "include a close association between the defendant and the principal, the defendant's participation in the planning or execution of the crime, and evidence of flight after the crime." *People v Carines*, 460 Mich 750, 758; 597 NW2d 130 (1999) (quotation marks and citation omitted).

---

[2] Swilley raised this issue and others in a pro se brief filed pursuant to Supreme Court Administrative Order No. 2004-6, Standard 4.

[3] Welch was convicted of aiding or abetting first-degree premeditated murder, carrying a firearm with unlawful intent, and two counts of felony-firearm. "The elements of first-degree murder are (1) the intentional killing of a human (2) with premeditation and deliberation." *People v Bennett*, 290 Mich App 465, 472; 802 NW2d 627 (2010). The elements of carrying a firearm with unlawful intent are (1) the carrying of a firearm; (2) with the intent to use the firearm in an illegal manner against another person. *People v Mitchell*, 301 Mich App 282, 292; 835 NW2d 615 (2013). The elements of felony-firearm are: (1) the possession of a firearm; (2) during the commission of, or the attempt to commit, a felony. MCL 750.227b.

Welch does not dispute that sufficient evidence was presented to prove that Swilley shot and killed Weems, but contends that the evidence failed to prove that he aided or abetted Swilley in committing murder and, at most, showed only that he was an accessory after the fact or that he could have "guessed" Swilley's intentions. We disagree. The record reflects that both Swilley and Welch had prior difficulties with Weems and that Welch had informed Weems's mother that he was waiting for Weems to be released from prison, which supports an inference that Welch shared an intent to harm Weems. Further, there was testimony that, upon seeing Weems walking down the street, Welch stopped his van to allow Swilley to exit with a gun and pursue Weems, which is sufficient to prove that Welch assisted Swilley by enabling him to confront and shoot Weems. The evidence that Welch left the van to confirm that Weems was dead, and then communicated to Swilley that he "got that motherf***er" also supports an inference that he and Swilley shared a common intent and that Welch had knowledge of Swilley's intention to shoot and kill Weems. Finally, after the offense, Welch borrowed Dorsey's keys and used them to enter her apartment to obtain and dispose of the gun that Swilley used to shoot Weems. Although this evidence supports a finding that Welch acted as an accessory after the fact, it also supports an inference that Welch wanted to dispose of the gun because of his consciousness of guilt for his own involvement in the murder.

On appeal, Welch attempts to discredit the testimony of Cannon and Dorsey by emphasizing that they had both given earlier statements to the police that were inconsistent with their trial testimony and that both had made favorable arrangements for their testimony at trial. However, the credibility of their testimony was for the jury to resolve. *Millstead*, 250 Mich App at 404. Viewed in a light most favorable to the prosecution, the evidence was sufficient to support Welch's convictions under an aiding or abetting theory.

## 2. SWILLEY

There was also sufficient evidence to support Swilley's convictions. Cannon testified that he witnessed Swilley exit Welch's van to chase after and then fatally shoot Weems, and Dorsey testified that Swilley admitted to her that he had killed Weems. Viewed in the light most favorable to the prosecution, that testimony was sufficient to support Swilley's convictions. Swilley's argument on appeal is based on his attacks on the credibility of the prosecution witnesses, but the credibility of their testimony was for the jury to resolve, and we will not interfere with that role on appeal. *Id*.

## III. SEPARATE TRIALS

## A. STANDARD OF REVIEW

Welch next argues that the trial court erred by allowing the prosecution to try him and Swilley jointly. He contends that he requested a separate trial at a hearing on April 11, 2016, but the record discloses that the hearing on that date was limited to Swilley's motion for severance, and the transcript of this hearing makes no mention of a similar request or motion by Welch, nor does the record contain any written motion for severance filed by Welch. Accordingly, this issue is unpreserved. *People v Dupree*, 486 Mich 693, 703; 788 NW2d 399 (2010). An unpreserved issue is reviewed for plain error affecting the defendant's substantial rights. *Carines*, 460 Mich at 763-764. An error is plain if it is clear or obvious, and an error affects substantial rights if it is

-4-

prejudicial, i.e., if it affects the outcome of the proceedings. *People v Jones*, 468 Mich 345, 355-356; 662 NW2d 376 (2003).

## B. STANDARD OF REVIEW

In *People v Hana*, 447 Mich 325, 346-347; 524 NW2d 682 (1994), our Supreme Court stated:

> Severance is mandated under MCR 6.121(C) only when a defendant provides the court with a supporting affidavit, or makes an offer of proof, that clearly, affirmatively, and fully demonstrates that his substantial rights will be prejudiced and that severance is the necessary means of rectifying the potential prejudice. The failure to make this showing in the trial court, absent any significant indication on appeal that the requisite prejudice in fact occurred at trial, will preclude reversal of a joinder decision.

The *Hana* Court indicated that neither the existence of inconsistent defenses nor incidental spillover prejudice is sufficient to require severance. *Id.* at 349.

Welch asserts that the spillover prejudice resulting from the testimony of Dorsey and Cannon was too overwhelming and should have resulted in separate trials. Welch contends that if he had received a separate trial, his jury would not have been exposed to Dorsey's testimony that Swilley confessed to shooting Weems or Cannon's testimony that Welch was present at the shooting. This argument is without merit. Dorsey testified that Welch borrowed her keys to enter her apartment and retrieve the gun that Swilley used to shoot Weems. Cannon testified that he, Swilley, and Welch were riding in a van when they saw Weems walking, and that Welch stopped the van to allow Swilley to exit and pursue Weems. Cannon's testimony was probative of whether Welch aided or abetted Swilley in the shooting of Weems, and Dorsey's testimony was probative of whether Welch actively sought to conceal material evidence, which in turn was probative of Welch's consciousness of guilt in relation to Weems's murder. Welch fails to explain why the testimony of Dorsey and Cannon would not have been admissible against him, so that severance was necessary to protect his right to a fair trial. Accordingly, Welch has not established that failure to sever the trials constituted plain error.

## IV. ACCOMPLICE INSTRUCTIONS

## A. STANDARD OF REVIEW

Both defendants argue that the trial court erred by failing to give special jury instructions on how to consider testimony offered by an accomplice in relation to the testimony of Cannon and Dorsey. We review de novo a claim of instructional error, but review for an abuse of discretion a trial court's determination whether an instruction applies to the facts of the case. *People v Hartuniewicz*, 294 Mich App 237, 242; 816 NW2d 442 (2011).

> Jury instructions must include all elements of the charged offense and must not exclude material issues, defenses, and theories if the evidence supports them. Even if somewhat imperfect, instructions do not create error if they fairly present the issues for trial and sufficiently protect the defendant's rights. Error does not

result from the omission of an instruction if the charge as a whole covered the substance of the omitted instruction. [*People v Canales*, 243 Mich App 571, 574; 624 NW2d 439 (2000).]

## B. ANALYSIS

### 1. WELCH

Welch did not request the accomplice jury instructions, and his lawyer expressed satisfaction with the jury instructions given by the trial court. Accordingly, Welch's claim of instructional error has been waived. *People v Lueth*, 253 Mich App 670, 688; 660 NW2d 322 (2002).[4]

### 2. SWILLEY

Swilley sought to have three instructions read to the jury: M Crim JI 5.4, which addresses testimony from an undisputed accomplice, M Crim JI 5.5, which addresses the testimony of a disputed accomplice, and M Crim JI 5.6, which explains how the jury is to evaluate the testimony of an accomplice. Swilley argues that the undisputed accomplice instruction applied to Dorsey's testimony because she was charged with being an accessory after the fact and that the disputed accomplice instruction applied to Cannon's testimony because a witness saw three men running from the crime scene. We disagree.

No evidence placed Dorsey at the scene of the crime or demonstrated that she had any advance knowledge that Swilley or Welch planned to shoot Weems. Because there is no basis to conclude that Dorsey could have been charged with the same crimes with which defendants were charged, she cannot be considered an accomplice to those crimes. See *People v Ho*, 231 Mich App 178, 189; 585 NW2d 357 (1998) (disputed accomplice instruction not necessary where the person in question was not present at the scene of the crime for which the defendant was charged). Moreover, the trial court protected defendants' right to a fair trial by instructing the jury that it could consider the evidence of Dorsey's plea agreement as it related to her credibility and self-interest in testifying.

Next, Cannon admitted that he was present when Welch stopped his van to allow Swilley to exit and pursue Weems. But his mere presence was insufficient to show that he aided or abetted either Welch or Swilley, *People v Norris*, 236 Mich App 411, 419-420; 600 NW2d 658 (1999), and no evidence supported a finding that Cannon did anything to show that he knowingly and willingly helped or cooperated with defendants to commit the crime. Accordingly, the trial court did not abuse its discretion by refusing to give the requested accomplice instructions.

---

[4] Even if the issue had not been waived, however, as explained below in relation to Swilley's preserved claim of instructional error, the trial court did not err by refusing to give the requested accomplice instructions.

## V.  MISTRIAL

### A.  STANDARD OF REVIEW

Swilley argues in both his principal brief on appeal and in his Standard 4 brief that the trial court abused its discretion by denying his motion for a mistrial because of references to polygraph tests in recorded telephone conversations between Swilley and Dorsey.  We review for an abuse of discretion a trial court's decision on a motion for a mistrial.  *People v Nash*, 244 Mich App 93, 96; 625 NW2d 87 (2000).  "A trial court should grant a mistrial 'only for an irregularity that is prejudicial to the rights of the defendant and impairs his ability to get a fair trial.' "  *People v Schaw*, 288 Mich App 231, 236; 791 NW2d 743 (2010), quoting *People v Haywood*, 209 Mich App 217, 228; 530 NW2d 497 (1995).

### B.  ANALYSIS

During Dorsey's testimony, the prosecution played recorded telephone calls between Dorsey and Swilley.  Their conversations included references to both Dorsey and Swilley refusing to take polygraph tests.  No evidence regarding any actual polygraph test or any results was received.  A reference to taking or passing a polygraph test constitutes error, but the error does not always mandate reversal.  *Nash*, 244 Mich App at 97-98.  To determine whether reversal is required, this Court should consider:  (1) whether the defendant objected to the reference and/or requested a cautionary instruction; (2) whether the reference to the polygraph was inadvertent; (3) whether the reference was repeated or isolated; (4) whether the reference was made in an attempt to bolster the credibility of a witness; and (5) whether the results of the polygraph test were admitted or whether the reference was merely to a test having been taken.  *Id*. at 98.

Application of the *Nash* factors does not indicate that Swilley was entitled to a mistrial under the facts presented.  The references to polygraph tests were improper; however they were isolated, fairly vague, and did not indicate that any person had in fact taken a polygraph test, and there was no disclosure of the results of any polygraph test.  There is also no basis for concluding that the references were introduced in an attempt to bolster the credibility of any witness.  Accordingly, the trial court did not abuse its discretion by denying Swilley's motion for a mistrial.

## VI.  GREAT WEIGHT OF THE EVIDENCE

### A.  STANDARD OF REVIEW

Next, Swilley argues in both his principal brief and in his Standard 4 brief that the jury's verdicts are against the great weight of the evidence.  However, he failed to preserve his great-weight claim by raising the issue in a motion for a new trial in the trial court.  See *People v Cameron*, 291 Mich App 599, 617; 806 NW2d 371 (2011).  "[W]hen a party fails to preserve a great-weight issue for appeal, an appellate court will look for 'plain error affecting the defendant's substantial rights.' "  *Id.*, quoting *People v Musser*, 259 Mich App 215, 218; 673 NW2d 800 (2003).

## B. ANALYSIS

A new trial may be granted on some or all of the issues if a verdict is against the great weight of the evidence. MCR 2.611(A)(1)(e). The test is whether "the evidence preponderates heavily against the verdict so that it would be a miscarriage of justice to allow the verdict to stand." *People v Gadomski*, 232 Mich App 24, 28; 592 NW2d 75 (1998).

Swilley argues that the jury verdict is against the great weight of the evidence because the testimony of Cannon and Dorsey was not credible because both witnesses gave prior statements to the police that were inconsistent with their trial testimony, and that both witnesses acknowledged that they received favorable treatment in exchange for their testimony. However, the issue of witness credibility ordinarily should be left for the trier of fact, even when the witness testimony is inconsistent or conflicting. *People v Lemmon*, 456 Mich 625, 642-643; 576 NW2d 129 (1998). Cannon and Dorsey both explained their reasons for their prior inconsistent statements, and the jury was aware of the favorable treatment they received in exchange for their testimony. Their testimony at trial was not inherently implausible, and it did not defy physical realities. Therefore, the credibility concerns with their testimony are not a sufficient basis on which to grant a new trial on the ground that the jury's verdicts are against the great weight of the evidence. See *Id*. at 645-646.

## VII. PROSECUTIORAL MISCONDUCT

### A. STANDARD OF REVIEW

Swilley argues that reversal is required because the prosecutor improperly used the perjured testimony of Cannon and Dorsey to obtain his convictions. Swilley did not raise this argument in the trial court, so the issue is unpreserved. *Dupree*, 486 Mich at 703.

### B. ANALYSIS

The test of prosecutorial misconduct is whether the defendant was denied a fair and impartial trial. *People v Watson*, 245 Mich App 572, 586; 629 NW2d 411 (2001). A prosecutor may not knowingly use perjured testimony to obtain a conviction, and must inform the trial court and the defendant when a prosecution witness lies under oath. *People v Wiese*, 425 Mich 448, 455; 389 NW2d 866 (1986). A prosecutor must correct perjured testimony related to the facts of the case. *People v Gratsch*, 299 Mich App 604, 619-620; 831 NW2d 462 (2013), vacated in part on other grounds 495 Mich 876 (2013).

Swilley's argument is based on the fact that Cannon admitted at trial that his testimony differed from his earlier statements to the police. He therefore maintains that Swilley's trial testimony was perjurious and should have been described as such by the prosecutor. Swilley seemingly assumes that because Cannon's statements to the police were more favorable to him, Cannon's trial testimony must have been false. Nothing in the record supports this assumption, or Swilley's assertion that the prosecutor was required to characterize Cannon's trial testimony as false. More significantly, the fact that Cannon had made an earlier statement that differed from his trial testimony was fully disclosed to the jury. Therefore, the issues related to Cannon's testimony were properly resolved as a credibility decision made by the jury. See *Milstead*, 250 Mich App at 404.

## VIII.  INEFFECTIVE ASSISTANCE

## A.  STANDARD OF REVIEW

Swilley also argues that he was denied the effective assistance of a lawyer because his lawyer failed to conduct an adequate investigation and call crucial witnesses at trial.  Because Swilley did not raise an ineffective assistance of counsel claim in a motion for a new trial or request for a *Ginther*[5] hearing in the trial court, our review of this issue is limited to mistakes apparent on the record.  *People v Mack*, 265 Mich App 122, 125; 695 NW2d 342 (2005).

## B.  ANALYSIS

To establish that his trial lawyer provided ineffective assistance, a defendant must show that: (1) his lawyer's representation fell below an objective standard of reasonableness; and (2) but for his lawyer's deficient performance, there is a reasonable probability that the outcome of the proceeding would have been different.  *People v Vaughn*, 491 Mich 642, 670-671; 821 NW2d 288 (2012).  This Court presumes that a defendant's lawyer rendered effective assistance and exercised reasonable professional judgment in all significant decisions.  *Id*. at 670.  The decision whether to call or question witnesses is a matter of trial strategy, and the defendant's lawyer has wide discretion regarding matters of strategy.  *People v Heft*, 299 Mich App 69, 83; 829 NW2d 266 (2012).  The failure to call or question a witness or to present certain evidence constitutes ineffective assistance only when it deprives the defendant of a substantial defense. *People v Russell*, 297 Mich App 707, 716; 825 NW2d 623 (2012).  "A substantial defense is one that might have made a difference in the outcome of the trial."  *People v Chapo*, 283 Mich App 360, 371; 770 NW2d 68 (2009) (quotation marks and citation omitted).

Swilley asserts that telephone records could have shown that he did not call Welch or Cannon and that he was not in the area where the offense occurred at the time of the shooting. He has not, however, produced any records or submitted an affidavit stating what any records would reveal.  Moreover, even if records showed that Swilley did not call Welch or Cannon on the morning of the offense and that his cell phone was not in the area at the time of the shooting, Swilley fails to explain how such evidence could establish a substantial defense.  The testimony indicated that Swilley was with Welch and Cannon at the time of the offense, so he would not have had any apparent reason to call them.  Furthermore, evidence that Swilley's phone was not in the area at the time of the offense would not establish that he was not in the area.  Cannon's eyewitness testimony placed Swilley at the scene of the shooting and Dorsey's testimony supported a finding that Swilley confessed to shooting Weems.  Accordingly, Swilley has not shown that trial counsel's failure to obtain or present phone records was objectively unreasonable or resulted in prejudice.

Swilley also complains that his lawyer failed to call witnesses who could have established an alibi defense, but Swilley has not identified any witnesses or summarized the substance of testimony they could have provided.  Therefore, there is no basis for concluding

---

[5] *People v Ginther*, 390 Mich 436, 443; 212 NW2d 922 (1973).

that any witness could have aided Swilley in establishing an alibi defense. Swilley's claims of ineffective assistance are, therefore, without merit.

## IX. SENTENCING

Finally, Swilley argues that the trial court erred by failing to score the sentencing guidelines for his convictions of carrying a dangerous weapon with unlawful intent and felon in possession of a firearm. However, at sentencing, the trial court reasoned that the guidelines do not apply to first-degree premeditated murder, which carries a mandatory penalty of life imprisonment without parole, and that the sentences for Swilley's lesser offenses would be subsumed by that sentence, so it was not necessary to score the guidelines. Rather than challenge that decision, Swilley's lawyer expressly agreed that it was unnecessary to score the guidelines for Swilley's lesser offenses. Accordingly, this issue was waived and we will not address it further. See *People v Carter*, 462 Mich 206, 215; 612 NW2d 144 (2000) (holding that an issue is waived, i.e., extinguished, if a defendant or his lawyer intentionally relinquishes or abandons a known rights).

There are no errors warranting relief in either Swilley's or Welch's trial. Therefore, we affirm both defendants' convictions and sentences.

/s/ Michael J. Kelly
/s/ Amy Ronayne Krause
/s/ Mark T. Boonstra

-10-